[Cite as *State v. Crawford*, 2026-Ohio-3033.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 25AP-558 |
| v. | : | (C.P.C. No. 23CR-3654) |
| Michael B. Crawford, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

———————————

D E C I S I O N

Rendered on August 6, 2026

———————————

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Darren M. Burgess*, for appellee. **Argued:** *Darren M. Burgess*.

**On brief:** *Campbell Law LLC*, and *April F. Campbell*, for appellant. **Argued:** *April F. Campbell* .

———————————

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Michael B. Crawford, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of two counts of trafficking in cocaine, in violation of R.C. 2925.03, and two counts of possession of cocaine, in violation of R.C. 2925.11, all first-degree felonies. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} On July 6, 2023, appellant[1] was charged in a five-count indictment: in Counts 1 and 4 he was charged with trafficking in cocaine in violation of R.C. 2925.03, both felonies of the first degree; in Counts 2 and 5 appellant was charged with possession

———————————

[1] Three co-defendants were also indicted.

of cocaine in violation of R.C. 2925.11, both also felonies of the first degree; and lastly, in Count 3 he was charged with the illegal manufacture of a controlled substance in violation of R.C. 2925.04, a felony of the second degree. All counts were accompanied by major drug-offender and multiple forfeiture specifications. The indictment alleged that all the offenses occurred on or about April 19, 2023. Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 3} On May 19, 2025, a jury trial commenced. At trial, the following evidence was adduced.

{¶ 4} Plaintiff-appellee, State of Ohio, called Sergeant Bryan Mason with the Columbus Police Department ("CPD") as its first witness. Prior to April of 2023, Sergeant Mason became involved in a money laundering investigation by the Drug Enforcement Agency ("DEA") and CPD that led to the surveillance of 3884 Rubythroat Drive in Columbus, Ohio. (May 20, 2025 Tr. Vol. 2 at 209.) Sergeant Mason surveilled the residence back in May 2022. *Id.* He took photographs of an individual loading items into the back of a Volkswagen Beetle in a garage, when the garage door was open. *Id.* at 209-213; State's Ex. A 2-6. Sergeant Mason identified the person as appellant. *Id.* at 212-213.

{¶ 5} Appellant placed an "Amazon" box and a gray-colored bag in the trunk of the vehicle. Sergeant Mason saw appellant backing the vehicle out of the garage and driving away. *Id.* at 214. Appellant drove past a trash collection point approximately 100 feet from the front door of the residence to a trash compactor about 150 feet from the residence's front door. *Id.* at 214-215. Sergeant Mason went through the trash and found an Amazon box and a gray bag. *Id.* at 217. Inside the Amazon box were three cell phone boxes bearing the names of different individuals. Inside the gray bag was what Mason believed to be kilo-level narcotics wrappers—that is, cellophane used to wrap narcotics. *Id.* at 218-220. Sergeant Mason testified that the residence did not belong to appellant; instead, it belonged to Kiona Anthony. *Id.* at 224.

{¶ 6} The state called Columbus Police Officer Phillip Miller as its next witness. Officer Miller testified that after May 2022, surveillance of the residence continued, and on April 19, 2023, the Columbus Police Narcotics Unit and the DEA executed a search warrant after appellant was observed leaving the residence with a co-defendant. (Tr. at 239.) Just before leaving, appellant was photographed speaking with several individuals

in the garage while holding a distinctive yellow and orange bookbag/backpack which he then carried into the home. (Tr. at 240-243.) Officer Miller testified the bag appeared weighed down. *Id*. at 241.

{¶ 7} Officer Miller continued his testimony, stating that during the execution of the search warrant of the residence, the search team found appellant's suitcase with his attached name tag inside the front door. (Tr. at 247.) The residence was a three-story condominium and contained overwhelming evidence of cocaine trafficking and manufacturing. As law enforcement made their way through the front door, they immediately observed automated money counters, over $50,000 in U.S. currency wrapped in rubber bands, jewelry, and almost a kilogram of cocaine with a cutting agent on the top of the refrigerator. (Tr. at 248-250.) Investigators also found plastic bags used to package narcotics for sale, air purifiers, respirators, digital scales, mixers and blenders. (Tr. at 250-252.) In the living room investigators found surgical masks, plastic wrap, a mixing bowl, duct tape, and a vacuum sealer. *Id*. at 254.

{¶ 8} The state then called Special Agent Christopher Cadogan, who testified he searched the upper east bedroom. (Tr. at 274, 277.) He discovered six kilograms of cocaine in a black trash bag on the floor of the bedroom, between the end of the bed and the closet, and "press plates," which are used to compact cocaine for transportation and sale. *Id*. at 278-279. On the bed in that room were miscellaneous financial documents from Nevada State Bank, Navy Federal Financial Group, a voided Nevada State Bank check, a letter from Green Dot Bank, and a letter from Progressive Commercial, LLC, detailing electronic funds transfers. All of these documents bore appellant's name and/or the names of Crawford Industries, LLC, and Crawford Trucking & Logistics, LLC. Also recovered were numerous bank cards including a PNC Bank Virtual Wallet Visa debit card, an NSB Visa Debit Card, a Capital One Visa Signature card, and a GO BIZ Visa debit card all belonging to appellant. (Tr. at 280-283.)

{¶ 9} Next, Trooper Timothy Ehrenborg testified he initiated a traffic stop of a black Nissan Sentra with dark-tinted windows. (Tr. at 293.) Ms. Angele Berry was the driver, and appellant was the passenger. *Id*. at 297. A canine alerted to the odor of narcotics coming from the vehicle, and when a search was performed, inside the trunk of the vehicle next to an air freshener, investigators found the same yellow and orange

backpack appellant had been holding while in the garage. (Tr. at 243-244.) Inside the backpack were three individually wrapped one-kilogram bricks of cocaine. (Tr. at 298.)

{¶ 10} Finally, the State called as its last witness forensic scientist Michelle Ball with the Columbus Police Crime Lab. Ms. Ball testified she tested the suspected drugs. (Tr. at 311.) While she did not test all substances submitted to the crime lab, she did test those found in the master bedroom, and she determined they contained 1005.61 grams of cocaine. (Tr. at 320, 337; State's Ex. E-1.) Ball likewise tested the substances found in the backpack in the trunk, which likewise contained cocaine in the amount exceeding 100 grams. (Tr. at 327, 332, 349.)

{¶ 11} After the state rested its case, defense counsel moved for acquittal under Crim.R. 29, and the trial court denied the motion.

{¶ 12} The following day, the jury returned verdicts of guilty on Counts 1, 2, 4, and 5, and a verdict of not guilty as to Count 3. The jury likewise found the amounts of cocaine exceeded 100 grams for Counts 1, 2, 4, and 5. (Tr. at 344.) After the jury found appellant guilty of 4 counts, defense counsel renewed his motion for acquittal under Crim.R. 29, but the trial court again denied the motion. (May 21, 2025 Tr. Vol. 3 at 448.)

{¶ 13} On June 30, 2025 the trial court held a sentencing hearing. The trial court found that Counts 1 and 2 merged, that Counts 4 and 5 merged, and that a prison term was mandatory. The state elected sentencing on Counts 1 and 4. On July 1, 2025, the trial court issued a judgment entry which reflected the verdict of the jury and imposed an indefinite concurrent mandatory sentence of 11 years minimum to a maximum of 16.5 years. (July 1, 2025 Jgmt. Entry.)

{¶ 14} This timely appeal followed.

## II. Assignments of Error

{¶ 15} Appellant asserts six assignments of error for our review:

> [1.] Reversal is required because the trial court gave the State an extra peremptory challenge after it sustained the Defendant's *Batson* Challenge in violation of Crim.R. 24(D) and (E) and R.C. 2945.21.
>
> [2.] Crawford's right to a fair trial was denied by the trial court's decision to allow the State to use evidence from a trash pull in May of 2022, in violation of Evid.R. 403, 404, and the Due Process Clause.

[3.] The trial court abused its discretion in allowing an officer to explain to the jury why a drug trafficker would put a drug trafficking home in someone else's name over Crawford's objection.

[4.] The State's evidence that Crawford committed cocaine trafficking and cocaine possession (Counts One, Two, Four, and Five) was legally insufficient as a matter of law.

[5.] Crawford's conviction should be reversed because the evidence for cocaine possession and trafficking (Counts One, Two, Four, Five) weighed manifestly against convicting Crawford.

[6.] Because of cumulative error, Crawford was denied his right to a fair trial.

(Sic passim.)

## III. Law and Analysis

### A. Assignment of Error One

{¶ 16} In his first assignment of error, appellant argues reversal of his conviction is required because after the trial court sustained appellant's *Batson* challenge, it gave the state an extra peremptory challenge in violation of Crim.R. 24(D) and (E) and R.C. 2945.21. We do not agree.

{¶ 17} We begin by noting that counsel for appellant did not object to the trial court's giving the state the opportunity to re-exercise its second peremptory challenge after sustaining the *Batson* challenge lodged by appellant. It is well-settled that an appellate court will not "consider an error which the complaining party 'could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997), quoting *State v. Williams*, 51 Ohio St.2d 112, 117 (1977). *See also State v. Awan*, 22 Ohio St.3d 120, 122 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus. Thus, except for plain error, the failure to object to a ruling at trial constitutes a waiver of the issue upon appellate review. *State v. McCown*, 2006-Ohio-6040, ¶ 36 (10th Dist.).

{¶ 18} To demonstrate plain error, an appellant must show that, absent the alleged error, the result of the trial clearly would have been different. *State v. Long*, 53 Ohio St. 2d 91 (1978). The appellant bears the burden of demonstrating the existence of a plain or obvious error that affected the outcome of the trial and resulted in a manifest miscarriage of justice. *See, e.g.*, *State v. West*, 2022-Ohio-1556, ¶ 3, citing *State v. Perry*, 2004-Ohio-297, ¶ 22. To do this, an appellant must show " 'an error, i.e., a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings.' " *State v. Rogers*, 2015-Ohio-2459, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). However, even if the error is obvious, it must have affected the appellant's "substantial rights." Crim.R. 52(B). The Supreme Court of Ohio has " 'interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' " *Rogers* at ¶ 22, quoting *Barnes* at 27. As such, the appellant must demonstrate a reasonable probability that the error resulted in prejudice to him. *See id.*

{¶ 19} In this case, after the trial court sustained appellant's *Batson* challenge, it seated the juror the state had sought to remove by way of its second peremptory challenge and then granted the state the opportunity to re-exercise that second peremptory challenge. Importantly, however, the record shows that the state *did not exercise* anymore of its peremptory challenges—i.e., its second, third or fourth peremptory challenges. Thus, appellant cannot possibly show that, but for the state being given an "extra" peremptory challenge, the outcome of the trial clearly would have been different.

{¶ 20} In short, the trial court did not plainly err in giving the state the opportunity to re-exercise its second peremptory challenge which the state did not use. Accordingly, appellant's first assignment of error is overruled.

**B. Assignment of Error Two**

{¶ 21} In appellant's second assignment of error, he argues his right to a fair trial was denied by the trial court's decision to allow the state to use evidence from a trash pull in May 2022, in violation of Evid.R. 403, 404, and the Due Process Clause. We find no merit in this assignment of error.

{¶ 22} As discussed above under appellant's first assignment of error, an appellate court will not "consider an error which the complaining party 'could have called, but did not call, to the trial court's attention at a time when such error could have been avoided

or corrected by the trial court.' " *Foreman*, 79 Ohio St.3d at 81, quoting *Williams,* 51 Ohio St.2d at 117. *See also Awan*, 22 Ohio St.3d at 122, quoting *Childs*, 14 Ohio St.2d, paragraph three of the syllabus. Failure to object to the admission of evidence at trial waives all but plain error. *Rogers*, 2015-Ohio-2459, at ¶ 22-23.

{¶ 23} In this case, although we recognize appellant filed a motion in limine to exclude the testimony about which he now complains, he did not renew the motion or make any objections during the witness' examination at trial. Thus, he has forfeited all but plain error review on this issue. *See State v. Grubb*, 28 Ohio St.3d 199, 203 (1986) (an order denying a motion in limine is a preliminary ruling about an evidentiary issue that is anticipated, and the issue is preserved only by a timely objection when the issue is actually reached during the trial). Yet, in his brief, appellant does not argue that the admission of the officer's testimony regarding watching appellant dispose of trash outside the residence under surveillance rose to the level of plain error. (*See* Brief of Appellant at 13-19.) Instead, he contends that the trial court should have, *sua sponte*, excluded this testimony under Evid.R. 403, 404(B), and the Due Process Clause. *Id.*

{¶ 24} Thus, while appellant has only preserved plain error under Crim.R. 52(B), on appeal, he has failed to argue the existence of plain error. "The burden of affirmatively demonstrating error on appeal rests with the party asserting error." (Citations omitted.) *Lundeen v. State Med. Bd. of Ohio*, 2013-Ohio-112, ¶ 16 (10th Dist.). *See* App.R. 16(A)(7); *State v. Hubbard*, 2013-Ohio-2735, ¶ 34 (10th Dist.). *See also Cook v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-4966, ¶ 40 (10th Dist.), quoting *Bond v. Canal Winchester*, 2008-Ohio-945, ¶ 16 (10th Dist.) (" 'It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.' "). Because appellant has failed to present any plain error arguments on appeal, he has failed to meet his burden of demonstrating error.

{¶ 25} Moreover, even if appellant had presented plain error arguments in support of his second assignment of error, it is difficult to see how he would be able to demonstrate a reasonable probability that the admission of the testimony about which he now complains affected the outcome of trial. This is so because, as explained more fully below under the fourth and fifth assignments of error, the totality of the evidence of appellant's guilt in this case was overwhelming.

{¶ 26} Accordingly, appellant's second assignment of error is overruled.

### C. Assignment of Error Three

{¶ 27} In his third assignment of error, appellant argues that he was unfairly prejudiced when the state elicited testimony from a DEA task force officer regarding why someone who uses a residence for drug trafficking would put that residence in someone else's name, despite not having a good-faith basis for posing the question. This assignment of error is meritless.

{¶ 28} It is well-settled that the admission of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 2006-Ohio-2815, ¶ 62. Furthermore, "[w]here the good-faith basis for a question is not challenged at the trial level, it is presumed that a good-faith basis exists." *State v. Lowe*, 2005-Ohio-6614, ¶ 11 (10th Dist.), citing *State v. Gillard*, 40 Ohio St.3d 226, 231 (1988), *abrogated on other grounds* ("Since the prosecutor's good-faith basis for asking these questions was never challenged, we presume she had one[.]"). *State v. McGuire*, 1997-Ohio-335.

{¶ 29} Here, when the prosecutor asked the DEA task force officer why someone who uses a residence for drug trafficking would "not put their name on it," counsel for appellant objected on the grounds that the question called for speculation, not on the grounds that the state lacked a good-faith basis for the question. (Tr. at 253.) Therefore, we must presume a good-faith basis for the question existed. *Lowe*; *Gillard*.

{¶ 30} Moreover, the record shows that when ruling upon the objection made by defense counsel, the trial court preemptively rejected any potential claims pertaining to relevance, prejudice, or character evidence, explaining that it would be relevant for the DEA officer to testify on the subject based on his experience of why "what he is seeing here makes him believe that it is a drug operation." (Tr. at 253-255.) Additionally, on cross-examination, counsel for appellant fully explored this issue, and he returned to the issue during closing argument. (Tr. Vol. 2 at 259-261; Vol. 3 at 398-399.)

{¶ 31} In short, appellant was not materially prejudiced by permitting the DEA officer's testimony on why a drug trafficker would not put a residence used for drug

trafficking in his own name, and the trial court did not abuse its discretion in admitting it.

{¶ 32} Appellant's third assignment of error is overruled.

### D. Assignment of Error Four and Five

{¶ 33} In his fourth assignment of error, appellant asserts that his convictions are not supported by sufficient evidence and should have been dismissed pursuant to Crim.R. 29. In his fifth assignment of error, appellant asserts the convictions are against the manifest weight of the evidence. We find no merit in either assignment of error.

{¶ 34} Crim.R. 29(A) provides, in relevant part, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). Whether a conviction is supported by legally sufficient evidence is a question of law. *State v. Thompkins*, 1997-Ohio-52.

{¶ 35} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 2010-Ohio-1881, ¶ 36 (10th Dist.), citing *Thompkins*, at ¶ 23. In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court will not disturb the jury's verdict unless the court finds "that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 2001-Ohio-4, ¶ 91, citing *Jenks* at 273.

{¶ 36} In a review for sufficiency of the evidence, we do not engage in a determination of the witnesses' credibility. *State v. Woodward*, 2004-Ohio-4418, ¶ 16 (10th Dist.), citing *State v. Goff*, 1998-Ohio-369, ¶ 86. Rather, "we essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the offense." *Id.*, citing *State v. Gore*, 131 Ohio App.3d 197, 200-201 (7th Dist. 1999). Further, the testimony of one witness, if believed by the jury, is sufficient to support a

conviction. *State v. Winston*, 2018-Ohio-2525, ¶ 21 (10th Dist.), citing *State v. Strong*, 2011-Ohio-1024, ¶ 42 (10th Dist.).

{¶ 37} Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins*, 1997-Ohio-52. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at ¶ 25, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 38} Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.), quoting *State v. Nivens*, 1996 Ohio App. LEXIS *7 (May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing State *v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 39} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 2005-Ohio-449, ¶ 38 (10th Dist.), *reversed and remanded in part on other grounds*. Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 2006-Ohio-2070, ¶ 19 (10th Dist.). This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing

the credibility of the proffered testimony." ' " *State v. Huber*, 2019-Ohio-1862, ¶ 32 (10th Dist.), quoting *State v. Cattledge*, 2010-Ohio-4953, ¶ 6 (10th Dist.), quoting *Seasons Coal Co., Inc., v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 40} Appellant was indicted for trafficking cocaine in violation of R.C. 2925.03, and with possession of cocaine in violation of R.C. 2925.11. R.C. 2925.11 provides that no person shall knowingly obtain, use, or possess a controlled substance, and R.C. 2925.03 provides that no person shall knowingly sell, offer to sell, prepare for shipment, ship, transport, deliver, or prepare for distribution a controlled substance. When the trial court denied appellant's Crim.R. 29 motion, it provided the following explanation:

> I think that the evidence -- in the totality of its circumstances, I have looked at the evidence in the light most favorable to the non-moving party. As to Counts 1, 2 and 3, those three counts pertain to the operations at the Rubythroat Drive address when it comes to trafficking in cocaine. Based on the testimony of Mr. Mason, Mr. Miller and Mr. Cadogan that the drugs were bricked, wrapped, there was cutting agents, scales, baggies, the fact that the defendant had been surveilled at the home, some of his personal belongings were at the home, that is enough evidence for the jurors to decide -- and that goes to Counts 2 and 3 as well -- that Mr. Crawford knowingly prepared, shipped, transported, distributed or knowingly obtained, possessed or used, or knowingly engaged in the manufacture or production.
>
> As to the cocaine, of course, we have evidence there from Ms. Ball and Mr. Farrington that the drugs found in the home were, in fact, cocaine and a sufficient weight for this case. We have the testimony of Ms. Horton, along with Mr. Farrington, that indicate that there was cocaine and it was of sufficient weight for what was found in the car.
>
> Finally, having reasonable cause to believe that it was intended for sale or production for sale. I think the large amounts of cash, the cash counters are also indicative to this Court that not only was it being prepared to ship or deliver or whatever it might be, but that it was also reasonable to believe that it was intended for sale.
>
> So, for all those reasons and all the testimony as we sit here today, I will deny the defendant's Rule 29 motion.

(May 20, 2025 Tr. Vol. 2 at 366-368.) We are wholly in agreement with the trial court's explanation and analysis of the evidence presented at trial.

{¶ 41} Furthermore, appellant's challenge to the sufficiency of the evidence relating to lack of proof that appellant owned the residence used for drug trafficking and/or the vehicle in which cocaine was found while appellant was a passenger is unavailing. The state was not required to prove that either the residence or the vehicle belonged to appellant in order for there to be legally sufficient evidence. There was ample evidence that appellant was in the residence and had access to all areas. There was also ample evidence that appellant was in possession of the gray-colored backpack, that he knew about the cocaine and items of trafficking located in the residence, and that he had access to the cocaine.

{¶ 42} Therefore, based on all of the foregoing, we find the evidence is sufficient to support the convictions in this case, and the trial court did not err by denying appellant's motions for acquittal made pursuant to Crim.R. 29.

{¶ 43} Turning to the manifest weight argument in assignment of error five, appellant asserts that his convictions are against the manifest weight of the evidence because the evidence suggests an "inference" that he neither possessed nor trafficked in cocaine which is more "believable and persuasive" than finding otherwise. (Brief of Appellant at 23-24.) But this is not the correct legal standard for reviewing whether the convictions are against the manifest weight of the evidence. Rather, as set forth above, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at ¶ 25, citing *Tibbs*, 457 U.S. 31 at 42. " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *Martin*, 20 Ohio App.3d at 175 (1st Dist. 1983). Thus, "a prerequisite for any reversal on manifest-weight grounds is conflicting evidence." *State v. Tate*, 2014-Ohio-3667, ¶ 20.

{¶ 44} Here, appellant has not pointed out any conflicting evidence demonstrating that the jury clearly lost its way in convicting him of possession and trafficking of cocaine. Furthermore, ample evidence of drug possession and trafficking was presented, including evidence that appellant was present in the residence and vehicle that he had access to, and was familiar with those areas. Appellant was observed entering and leaving the residence and removing trash from the residence in April 2022. In addition, appellant's luggage and financial documents were recovered from several locations in the residence including a bedroom, and they were interspersed with rampant evidence of cocaine possession and trafficking including press plates, blenders, cutting agents, and drug packaging which were found throughout the home. Large amounts of cash and jewelry were also present, as was the distinctive backpack which appellant was seen with immediately before leaving the residence on April 19, 2023.

{¶ 45} Therefore, considering all of the evidence together, the jury did not clearly lose its way in concluding appellant perpetrated the crimes for which he was convicted. There is sufficient evidence to support appellant's convictions, and the trial court did not err in denying appellant's motions for acquittal made pursuant to Crim.R. 29. Furthermore, appellant's convictions are not against the manifest weight of the evidence.

{¶ 46} Appellant's fourth and fifth assignments of error are overruled.

### E. Assignment of Error Six

{¶ 47} In appellant's sixth assignment of error, he argues he was denied his right to a fair trial because of cumulative error. This assignment of error is meritless.

{¶ 48} Under the doctrine of cumulative error, an appellate court will reverse a criminal conviction if "the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 2012-Ohio-2577, ¶ 223. But, where there is no error, harmless or otherwise, there can be no cumulative error. *See, e.g.*, *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

{¶ 49} Here, as already discussed above, we have found no errors on the part of the trial court, plain, harmless, or otherwise. Therefore, the cumulative error doctrine is inapplicable in this case.

{¶ 50} Accordingly, based on the foregoing, appellant's sixth assignment of error is overruled.

## IV. Disposition

{¶ 51} Having overruled appellant's six assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and EDELSTEIN, JJ., concur.